**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| CONZALOS GLASCO, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:08-cv-1711-WTL-DML |
| ) | |
| CAPTAIN PRULHIERE, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion for Summary Judgment**

Having considered the pleadings, the defendants' motion for summary judgment, the responses to such motion, and the evidentiary record, and being duly advised, the court finds that the motion for summary judgment (dkt 45) must be **granted.** This conclusion is based on the following facts and circumstances:

1.  Conzalos Glasco ("Glasco") was at all relevant times confined at the Plainfield Correctional Facility ("PCF"). The PCF is a prison operated by the Indiana Department of Correction ("DOC"). Glasco alleges that on March 11, 2008, defendants Captain Prulhiere, Unit Team Manager Keith Hartzell, Lt. Puckett, Lt. Gibbs, Lt. Wiggins, Sgt. Pruett (misspelled "Pruitt" in the complaint), Officer Terry, and Officer Cornelius violated his federally secured rights by failing to protect him from an attack by other inmates.[1] The defendants seek resolution of Glasco's claim through the entry of summary judgment on the basis that Glasco failed to exhaust his available administrative remedies prior to filing this action.

2.  As noted, the defendants seek resolution of Glasco's claim through the entry of summary judgment. As with any such motion, the defendants' motion must be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting

---

[1] Glasco also alleges in his complaint that on April 13, 2008, Officer Cornelius threatened and intimidated Glasco by saying, "Get back in your unit. You better not come back out here for nothing." Glasco alleges he walked back to his unit and Officer Cornelius rushed up behind him, making Glasco think he was going to be attacked. Glasco further alleges that when Officer Cornelius gave him a roll of toilet paper the officer slammed the roll down on the desk trying to intimidate Glasco. The court finds that it need not consider the issue of exhaustion as to these allegations because they fail to state a claim upon which relief can be granted. "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Accordingly, this claim is dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b).

FED. R. CIV. P. 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). "Factual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant].'" *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson,* 477 U.S. at 247). A "material fact" is one that "might affect the outcome of the suit." *Anderson,* 477 U.S. at 248. A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

   3. "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The law applicable to the motion for summary judgment is this: The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). This requirement is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* 549 U.S. 199, 204 (2007) (citations omitted). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532 (citation omitted).

   4. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *See Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006).

   5. Construing the evidentiary record in the manner most favorable to Glasco as the non-movant, the material facts are the following:

    a. The DOC's current two-step grievance process has been in effect since December 1, 2005. The two-step grievance process replaced the DOC's prior grievance process, which consisted of five steps. The current two-step grievance procedure is uniformly applied throughout all DOC facilities, including the PCF.

    b. Before the formal grievance process begins, an offender is required to attempt to resolve his grievance informally.

    c. The formal grievance process begins when an offender submits a properly completed grievance form (State Form No. 45471) to the Grievance Investigator or Administrative Assistant of the facility where he is confined.

    d.      DOC rules require an offender to file his Step-One grievance within 20 business days from the day of the event that is the subject of the grievance. This limitation may be waived by the facility head or designee if there is a valid reason for doing so.

    e.      In the course of this first step, the offender's complaint is investigated by the facility's grievance specialist or by someone else.

    f.      If the Step-One grievance is not resolved in a manner that satisfies the offender, he may pursue the issue by filing an appeal ("Step Two") to the DOC's Offender Grievance Manager located in DOC's Central Office.

    g.      The DOC's Offender Grievance Manager is in the position to correct any errors made during the initial level of review (Step-One) and has greater authority to fashion an appropriate remedy.

    h.      Exhaustion of the grievance procedure requires pursuing an appeal to the final (second) step.

    i.      The grievance procedure also has procedural requirements. These include, but are not limited to, requiring an offender to pursue the informal grievance process before participating in the formal grievance process, requiring the offender to sign, date, and include all other necessary identifying information including the offender's DOC number on the grievance, requiring the offender to complete the proper grievance form and comply with the requirements of that form, and requiring the offender to request remedies that are available through the grievance process.

    j.      In the event a grievance is returned to the offender due to procedural errors, the original grievance will be returned to the offender along with a "Return of Grievance" form indicating the corrections the offender must make in order to resubmit his complaint. (State Form No. 45475).

    k.      Once an offender receives State Form No. 45475, the offender has five working days from the date of receiving the notification to re-initiate the informal grievance process and/ or to otherwise fix the grievance as indicated on State Form No. 45475.

    l.      A computer log is kept of all properly filed grievances filed on or after December 1, 2005. The log contains no entries for Glasco.

    m.      Glasco attempted to file three (3) grievances regarding the staff's failure to protect him from other offenders or staff's treatment toward him during the relevant time period. Two of those grievances (dated April 15, 2008, and June 16, 2008) were directed toward alleged intimidation by Officer Cornelius, a claim which was dismissed previously as legally insufficient.

    n.       The grievance filed on April 3, 2008, alleged that Captain Prulhiere and Lt. Gibbs discriminated against Glasco in how they treated him after he was attacked by other offenders on March 11, 2008. That grievance was returned to Glasco for failure to indicate how he attempted to resolve the grievance informally and the response to that attempt. Glasco was given five working days to comply with the administrative procedures policy as described. There is no evidence showing that Glasco cured the deficiencies and returned the grievance in a timely manner.

    o.       Glasco did not file any grievances concerning events involving the defendants that were accepted as procedurally correct and complete during the time relevant to his complaint.

    6.       Glasco argues that the prison failed to comply with its own grievance policy. He alleges that the Executive Assistant failed to assign a case number and that Glasco never received a receipt for any of his three grievances, much less within one working day, pursuant to the policy. He also argues that the prison did not provide a response to him within 15 working days. The consequences of such failures to comply with the policy, however, would not result in a finding that Glasco completed the grievance process.

    7.       Glasco did not file proper, timely, and complete grievances concerning any incidents involving Captain Prulhiere, Unit Team Manager Keith Hartzell, Lt. Puckett, Lt. Gibbs, Lt. Wiggins, Sgt. Pruett, Officer Terry, and Officer Cornelius. The grievance he filed on April 3, 2008, was directed only to conduct by Officer Cornelius and Lt. Gibbs and was returned to him with directions to correct the grievance, but it was not corrected and resubmitted.

    8.       The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that Glasco's action should not have been brought and must now be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004)("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice."); *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (explaining that "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating"). The defendants' motion for summary judgment (dkt 45) is **granted,** and judgment consistent with this Entry shall now issue.

    **IT IS SO ORDERED.**

Date: 12/01/2009

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana